Technologies v. AOL Mr. Tholander, when you're ready. May it please the Court. I'm Joel Tholander for Appellant Suffolk Technologies. The District Court's judgment should be reversed for two reasons. First, the Court misconstrued the generating said supplied file term in Claim 6. And second, there is a failure of proof that Gundivaram anticipates Claim 1. I'd like to start with claim construction. The inventors of the 835 patent conceived of a server supplying customized files tailored to the web page requesting those files years before Google was doing this. And the District Court read this important inventive contribution out of the patent. Now there is no dispute that generating said supplied file means tailoring a file to suit something. The question is whether the customized file is tailored to suit a received identification signal, so is it tailored to suit the originating file that is identified by that signal? Is it tailored to suit the underlying web page? Just so I can understand, everybody agrees that generating a said supplied file has a specialized meaning. That's right. And we have to go to the spec to understand that specialized meaning. That's exactly right. So now the debate is what is the content of that spec and what is it really teaching? Yes. That's certainly our view. And I would direct the Court to a couple of passages in particular if I may. The first is at column 6, lines 35-42. This is the appendix at 48. Columns 6, lines 35-42. And this is in this method. That's right. So this is describing the claim 6 embodiment that is depicted in figure 5. And there are two sentences back to back here. And in our briefing we've cited one of them and Google has cited the other. But I think when you read them together you'll see that they actually paraphrase each other. Yes, this is all very confusing. I mean you give sites to the spec and Google comes back and puts those sites in context and argues that they don't mean what you say they mean. And this is a particular extreme example because each of you are plucking out 1, 2, 3, 4. So you're saying that, I mean what Google points us to is in this method the server refers to the referrer address to determine. So they refer to that part. You take out the second part of that sentence, right? You call out the second part of the sentence. Your Honor, I want to highlight the entire sentence. In fact, I think if you read both of these sentences in their entirety this hopefully will make some sense. In this method, since the server refers to the referrer address, so that's taking the identification signal, to determine which application to run, the HTML file sent to the browser, this is the customized file, can be customized in dependence upon the web page from which the request for a new web page was made. So in other words, what's happening is the server takes the URL, it uses that URL, the URL by its definition identifies the web page. It uses that URL to identify the web page and then it customizes a file tailored to that web page. Now the second sentence, this is a sentence that Google likes. In this embodiment the server runs an application which takes in the referrer address and generates a new HTML file. What I'm suggesting is both of those sentences are describing the same generating step in Figure 5 and really it's functionally equivalent as if the second sentence started with IE. In other words, when we're talking about customization, tailoring to the web page, what we mean is it generates a file. Now I would, here's another passage which I think confirms this and this is on Column 3, it's the previous page. The extended passage is 63 through 410 and I would encourage the courts to read that whole thing but I'm going to start just with the very last sentence and even a part of that sentence which says specifically generated or tailored to suit the originating web page. It's Column 4, lines 9 through 10. So again, we're not making the argument that it's an express definition but if you take out the or and if that said which means, it would be express. So in our view this is just one step below but the intent is clear by implication that specifically generated means tailored to suit the originating web page. And when you take the passage that I've cited in its entirety, it again explains the same concept. The referrer details transmitted with the file may inform the server of the web page from which the request is being made. So the server is looking at the URL, it learns from that URL about the underlying web page. Thus, if the HTML file is requested, the server is able to identify from which web page the HTML file request is made and customize the HTML file accordingly. And again, then it says the details which are to be displayed can be tailored in dependence upon the current web page being displayed by the browser. So again, the question is really fairly simple I think and that is does the specification teach us that the file is tailored to suit the URL or does it teach that it's tailored to suit the originating web page? And it's very clear to me that what's happening... How would, how does the spec in any way describe how the new web page would be customized and tailored based on the content of the earlier web page? Well I think it's... Do you see that somewhere in the spec where they actually discuss, I don't know, some kind of protocol that would be undertaken in order to achieve that result? In terms of particular protocols, I think that's a design choice left to the engineer in terms of, you know, are you going to use keywords? How are you going to do that? But here's what it explains. It explains that you take an input, you have an application that takes as an input a URL. It identifies the web page and the output is a contextually relevant file that is tailored to suit that web page. The web page or that URL that represents that web page. Well that's the question, but every time it says this, never once, never once does it say that the file is tailored to suit the URL. This part of your disclosure is based on an earlier part of the disclosure, right? There's a kind of like the early invention and then there's a co-inventor that's been added on because there was a second invention involved in the past, right? And then the first invention was the idea of checking to see the URL of the current web page. The server will do that to figure out whether or not they want to allow that user on that URL to access the new web page. That's right. And then someone got the great idea of building on that invention and then let's add some more disclosure about a second concept. That's right. A second related concept, which is not only can we do the first thing, but let's also see if we can try to tailor whatever is displayed on the new web page based on something from the first web page. That's right. And if you look at it that way, one could see why, like the first invention, it's all based on the URL of the current web page. Likewise, that would be true for the second part of the disclosure. The second part of the disclosure, it encompasses the first. The first is not out. Claim one is the first part that you're talking about. And the invention still requires that you do an initial comparison of those identification signals. But the claim one also teaches that in the determining step, you're determining whether the identification signal identifies an originating web page. And then when it gets down to the deciding step, it says you decide, you compare, you do the determine, you compare, you decide whether to supply a file. And if in the deciding step, it is decided that a file is to be supplied, quote, supplying said file. Now that supplying said file is then unpacked in the next five dependent claims. You can supply a dummy file, you can supply the file requested, you can supply a file from a look at table, or you can supply a file that is generated to suit the underlying web page. Do any of the figures help you? Because when I look at the flowchart and all of these figures, they keep saying server compares refer address with allowed address or runs application using refer address. Figure five is the one that's directed to this one. Right. And the step is other server generates HTML file, which is clearly... Right. So before that, let's go a little further up the chain there. Other server looks at refer address, that's 53. Other server runs application using refer address, that's 54. Yes. Then other server generates HTML file. It seems to be all predicated on the refer address. It is using, and in fact, when you read the spec, that was where we started. I don't see anything in here that says, and then also look at all the wonderful content of that web page. Well, it could have been pulled out more possibly, but what you do is you read the specification in column six, describes this. And when it's describing the step, that is the passage we read. It said it customizes independent... And we do about Gundavaram. Yes. So Gundavaram, on this record as it stands, I'm going to start with the fourth point, which is that even if Gundavaram is admissible and fully reliable, it does not teach the comparison of an identification signal with another identification signal, which is the comparing step of claim one. And you can look, it's at JA4805. It describes comparing HTTP slash refer, which it calls dollar refer, that's the URL, 4805 is the page, with, against a file name called abc.html. Now, when all the claim construction briefing was going on, neither party had offered a construction of the term identification signal that required source, origin, or location. But the court's construction, which came after the summary judgment briefing, added those elements. So now identification signal is digital information that identifies the source, origin, or location of a file. And you can tell just by looking at 4805, that what is being compared there is abc.html. It's missing the directory, it's missing the server, it's missing anything showing where the origin or location of that file is. I guess we have an unusual situation where we have one side with an expert report commenting about all of this, and then we have the other side that doesn't have any expert commenting on any of this, right? That's true, but there is absolutely no... So all we have is, at this moment, you telling us this. Well, you have the claims, you have the construction, you have the prior art, and you have the proffer of proof at 2357 and 2362, explaining how these things work together. Under Rule 56, this is summary judgment, Suffolk's only burden is to show that they have failed to prove by clear and convincing evidence that this is anticipatory. And with respect, you can just read that and, giving us our inferences, we should win. I'm within my... All right. Thank you, Mr. Thollinger. Mr. Hirsch. May it please the Court, and good morning. I want to make just one very brief comment about the claim construction issue, which is that Mr. Thollinger stood up here just now and said that how the patent interprets the semantic content of webpages is a design choice left to the engineer. This is the very heart of the dispute, whether this invention tailors or customizes requested webpages based on the address or the content of the requesting webpage. And now we learn... We've already observed that there's nothing in the patent that talks about how to do this, and now we learn that it is a design choice left to the engineer, and I think that reflects somewhat on the construction. As to the Gundavaram issue, all I heard just now was about the substance of the opinion that Dr. Ryan would have submitted had he not submitted it late, and therefore was stricken. I'm prepared to talk about the substance of that opinion if the Court wishes. Well, I'm not sure I heard it exactly as you did. What I thought I understood was even in the absence of that opinion, we ourselves can look at the claims and look at what your expert said, and drawing all inferences in favor of the patentee, there's enough of a problem to elude some re-judgment. Well, Your Honor, he had you look at that abc.html part of the Gundavaram reference, and he had you look at that because that supports the theory that Ryan didn't get to submit. And that theory is that abc.html is the tail end of a URL, and that therefore Gundavaram only compares a URL to a file name. And there's just a very significant substantive problem with that theory, and if we're going to talk about the theory rather than just note that he didn't get to present it, I'd like to tell you what it is. Namely, you'll see that there's a front slash in front of abc.html, which creates, certainly created for me the first time I saw it, the impression that this is like looking in your browser window, and seeing that the very last thing before the .html is the ultimate file destination. The fact is that front slash is a convention used in the CURL programming language when you want to compare a string of characters. It is not the front slash that you see in your browser. And therefore, you'll notice there's another front slash after html. These two front slashes are called a regular expression in PURL, and what they mean is we're going to compare everything that's inside these two slashes. Now, what's inside the two slashes is abc.html, which is just a placeholder for URL. This reference does compare a received URL with a predetermined list of URLs. And it's only by virtue of this sort of superficial similarity to what you'll see in your browser that they're able to argue otherwise. Did your expert say all of this? No, because the opinion never came in, but now he's raising it on oral argument. So I feel duty-bound to tell you that it is a meritless theory. But they made some kind of allegation that whatever this algorithm is by Gundobara, it doesn't disclose every single element of the claim convention, right? No, that's incorrect, Your Honor. It does disclose. Dr. Hardy's report, and we go through this in our brief, goes line by line, and it shows that every claim limitation is met. And their only theory that it's not is the one that they didn't get to present and that I just told you about. Can you give me the site for the expert report again? Yes, it'll just take me a moment. It's going to be around page 45 of our brief. On pages 45 to 48, we go through this and Dr. Hardy's opinions with record citations, they're all in the neighborhood of J.A. 6214 to J.A. 6215. The supposed breakdown in the correlation between Gundobaram and the patent, I suppose, occurs at the comparison step, according to them, and his opinion on that is at J.A. 6215. My brief says 6215, I hope it's right. If not, I'll just slide. So are there any other questions for me, Your Honors? Thank you very much, Mr. Hirsch. Mr. Gollander, you have your full rebuttal time. Thank you. Two quick points. The first, with respect to the expert issue, we had an expert report, which was excluded for wrong reasons, which I won't get into here, but you can look at that at J.A. 12427 to J.A. 12460. This is the supplemental report. The original report, there was never any theory on claimants. That's right, but I'm just telling you, he's making it sound like it's not contradicted. It was contradicted, and we've made that proffer at summary judgment, at the argument, which was the only opportunity we had. And the court never found that these elements were there. The court granted summary judgment on the basis that we didn't have expert testimony. That was the basis. That is not a proper basis for summary judgment of invalidity. Now, with respect to the claim construction, I just wanted to go back to the point about content. There's this idea that, on one hand, it's a simple URL issue, and on the other, it's a complicated content webpage issue. That is a complete red herring. There's no dispute that there's a tailoring involved, that the file is contextually tailored. So, something new and bold is going on here. The only question... So, in other words, content is being reviewed. The only question is, are we limited to the content of the URL? Are we talking about Just Claim 6, or are we back to the independent? That's Just Claim 6, I'm sorry. Which is the dependent claim. That's right. This is the generating set to five files. I'm sorry if I was not clear. But the point, again, is that this isn't a question of it's tailoring versus tailoring. The patent clearly teaches that, and there's no dispute that something is being tailored here. So, to do that, of course, you're looking at the content. The question is, are you basing it solely on the URL? Or have you opened yourself up to go look at the webpage? And it really makes no sense why you would limit yourself to the URL. And, in fact, the specification makes clear that you don't. Are there any further questions? Thank you very much, Mr. Hollander, Mr. Hirsch. I appreciate you being here today.